## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| DELORES FEATHERSTONE, TADEUSZ GOLEBIESKI, CORRIE MERROW, KELLY DAWN DAVIS, LISA MARKS, MICHAEL RUFFCORN, JIMMY TILLMAN, ROBERT D. HALEY, JR., FARRAH RODRIGUEZ, and ELIZABETH SALAZAR, individually and on behalf of all others similarly situated, | : : : : : : : : : : : : | **FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Case No: 2:23-cv-10362 <br><br> Hon. Linda V. Parker <br><br> Mag. Kimberly G. Altman |
| Plaintiffs, | : : : | |
| v. | : : | |
| FCA US, LLC, a Michigan limited liability company, | : : : | |
| Defendant. | : : | |

## PLAINTIFFS' FIRST AMENDED
## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, Delores Featherstone, Tadeusz Golebieski, Corrie Merrow, Kelly Dawn Davis, Lisa Marks, Michael Ruffcorn, Jimmy Tillman, Robert D. Haley, Jr., Farrah Rodriguez, and Elizabeth Salazar, individually and on behalf of all others similarly situated (hereinafter, "Plaintiffs"), by and through their undersigned attorneys, hereby brings this First Amended Collective and Class Action Complaint against FCA US, LLC. Plaintiffs' allegations herein are based upon knowledge as to matters relating to themselves and upon information and belief as to all other matters:

1

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, individually and on behalf of all similarly situated employees of Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS § 105 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* (the "Illinois Wage Acts"), the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.03, and the Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A) (the "Ohio Wage Acts").

2.      Defendant, FCA US, LLC ("FCA" or "Defendant") "is the eighth-largest automaker in the world based on total annual vehicle sales."[1] Its "brands include Abarth, Alfa Romeo, Chrysler, Dodge, Fiat, Fiat Professional, Jeep, Lancia, Maserati and Ram vehicles."[2]

3.      Upon information and belief, FCA's annual revenues often exceed $100 billion.

4.      To facilitate its business operations, FCA employs or employed numerous Plaintiffs as hourly employees.

5.      Regardless of the location where the Plaintiffs worked, or the specific

---

[1] https://careers.fcagroup.com/about-us/ (last visited June 2, 2023).
[2] *Id.*

job title held, FCA failed to compensate Plaintiffs at the appropriate overtime rate, including a failure to properly use the FLSA's "regular rate" calculation. More specifically, FCA failed to properly include shift differentials and/or non-discretionary bonuses other remuneration paid to Plaintiffs in calculating their correct overtime premiums as required by the FLSA. 29 C.F.R. §§ 778.108-109.

6.     The named Plaintiffs seek to represent all FCA hourly employees who: (a) received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other extra compensation for work performed during the applicable statutory period; and (b) whose overtime rates during this period did not account for this pay as required by FLSA, the Illinois Wage Acts, the Ohio Wage Acts, and the attendant regulations of each statute.

7.     FCA knew or could have easily determined Plaintiffs' appropriate overtime rates, and FCA could have properly compensated Plaintiffs at those rates, but deliberately chose not to.

8.     Plaintiffs seek a declaration that their legal rights were violated, an award of unpaid wages, and an award of all other available legal remedies, to make them whole for damages they suffered, and to ensure that FCA does not subject them and future workers to such unlawful conduct in the future.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

10.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

11.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

13.     Venue lies in in this District pursuant to 28 U.S.C. § 1391 because the Defendant is incorporated in this District and subject to personal jurisdiction in this District.

## PARTIES

14.    Plaintiff Delores Featherstone ("Featherstone") is an adult resident of Detroit, Michigan and is a current FCA employee since September 2020. FCA hired Plaintiff Featherstone as an hourly assembly worker. Plaintiff Featherstone worked at multiple FCA Michigan locations, including the Warren Truck Assembly facility and the Jefferson North Assembly facility. Initially, Featherstone was paid at a base hourly rate of $15.78; in February 2021, FCA raised Featherstone's base hourly rate to $17.51; in October 2021, FCA again raised Featherstone's base hourly rate to $18.54. Featherstone remains an FCA employee and her current base hourly rate remains at $18.54. Ms. Featherstone's consent to joint form was filed at ECF No. 1.

15.    Plaintiff Tadeusz Golebieski ("Golebieski") is an adult resident of Macomb Township, Michigan and was employed by FCA from June 2012 to January 2023. FCA hired Plaintiff Golebieski as a Welder Repair. Plaintiff Golebieski worked at the FCA Warren Stamping Plant facility. Plaintiff Golebieski was paid at a base hourly rate of $37.05. Mr. Golebieski's consent to joint form was filed at ECF No. 12.

16.    Plaintiff Corrie Merrow ("Merrow") an adult resident of Flushing, Michigan and is a current FCA employee since November 2017. FCA hired Plaintiff Merrow as a Production Operator. Plaintiff Merrow has worked in multiple FCA Michigan locations, including the Sterling Heights facility and the Warren Truck

Assembly facility. Plaintiff Merrow remains an FCA employee and her current base hourly rate remains at $27.56. Ms. Merrow's consent to joint form was filed at ECF No. 6.

17.     Plaintiff Kelly Dawn Davis ("Davis"), is an adult resident of Rockford, Illinois and was employed by FCA from April 2012 through November 2021. FCA hired Plaintiff Davis as a Line Worker at FCA's Belvedere Assembly facility. Plaintiff Davis was paid at the base hourly rate of $32.68. Ms. Davis's consent to joint form was filed at ECF No. 18.

18.     Plaintiff Lisa Marks ("Marks"), is an adult resident of Rockford, Illinois and is a current FCA employee since July 2000. FCA hired Plaintiff Marks as a Production Operator at FCA's Belvedere Assembly facility. Plaintiff Marks remains an FCA employee and her current base hourly rate remains at $31.77. Ms. Marks's consent to joint form was filed at ECF No. 14.

19.     Plaintiff Michael Ruffcorn ("Ruffcorn"), is an adult resident of Loves Park, Illinois and was employed by FCA from February 2010 through May 2023. FCA hired Plaintiff Ruffcorn as an Assembly Worker at FCA's Belvedere Assembly facility. Plaintiff Ruffcorn was paid at the base hourly rate of $31.73. Mr. Ruffcorn's consent to joint form was filed at ECF No. 15.

20.     Plaintiff Jimmy Tillman ("Tillman"), is an adult resident of Rockford, Illinois and was employed by FCA from February 1997 through March 2023. FCA

6

hired Plaintiff Tillman as a Line Worker at FCA's Belvedere Assembly facility. Plaintiff Tillman was paid at the base hourly rate of $31. Mr. Tillman's consent to joint form was filed at ECF No. 20.

21.    Plaintiff Robert D. Haley, Jr. ("Haley"), is an adult resident of Toledo, Ohio and is a current FCA employee since November 2013. FCA hired Plaintiff Haley as a Stock worker at its Toledo North Assembly Plant facility. Plaintiff Haley remains an FCA employee and his current base hourly rate remains at $33.71. Mr. Haley's consent to joint form was filed at ECF No. 20.

22.    Plaintiff Farrah Rodriguez ("Rodriguez"), is an adult resident of Toledo, Ohio and is a current FCA employee since May 2014. FCA hired Plaintiff Rodriguez as an Assembly worker at its Toledo Assembly Complex facility. Plaintiff Rodriguez remains an FCA employee and her current base hourly rate remains at $33.77. Ms. Rodriguez's consent to joint form was filed at ECF No. 14.

23.    Plaintiff Elizabeth Salazar ("Salazar"), is an adult resident of Toledo, Ohio and is a current FCA employee since April 2019. FCA hired Plaintiff Salazar as an Assembly worker at its Toledo Assembly Complex facility. Plaintiff Salazar remains an FCA employee, and her current base hourly rate remains at $24.00. Ms. Salazar's consent to joint form was filed at ECF No. 14.

24.    Additional putative FLSA Collective members were or are employed by Defendant as hourly employees during the past three years and their consent

forms will also be filed in this case.

25.     Defendant, FCA US, LLC ("FCA"), is a Michigan limited liability company whose registered agent is The Corporation Company, with a registered address of 229 Brookwood Dr., Suite 14, South Lyon, Michigan 48178.

26.     According to FCA's website, its U.S. headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

## **GENERAL ALLEGATIONS**

27.     Defendant, FCA US, LLC ("FCA") "is the eighth-largest automaker in the world based on total annual vehicle sales."[3] Its "brands include Abarth, Alfa Romeo, Chrysler, Dodge, Fiat, Fiat Professional, Jeep, Lancia, Maserati and Ram vehicles."[4]

28.     Upon information and belief, FCA's annual revenues often exceed $100 billion.

29.     To facilitate its business operations, Defendant employs or employed numerous Plaintiffs as hourly employees.

30.     Regardless of the location where the Plaintiffs worked, or the specific job title held, Defendant failed to compensate Plaintiffs at the appropriate overtime rate using the FLSA's "regular rate" calculation. More specifically, Defendant failed

---

[3] https://careers.fcagroup.com/about-us/ (last visited June 2, 2023).
[4] *Id.*

to include shift differentials and/or non-discretionary bonuses other remuneration paid to Plaintiffs in calculating their correct overtime premiums as required by the FLSA. 29 C.F.R. §§ 778.108-109.

31.     In addition to the base rate of pay, FCA incorporated various routine and non-discretionary bonuses into its payment structure. For example, FCA promised its hourly employees shift differential pay, various non-discretionary bonuses (including but not limited to performance awards), and other forms of remuneration.

32.     A "shift differential" is defined as "compensation at a higher wage or rate because of undesirable hours, or disagreeable work." *Herman v. City of St. Petersburg, Fla., Police Dep't*, 131 F. Supp. 2d 1329, 1331-32 (M.D. Fla. 2001) (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-69 (1948)).

33.     Throughout Plaintiffs' employment with FAC, on occasions where Plaintiffs worked the second or third shifts, Plaintiffs also earned extra shift differential pay.

34.     FCA's second shift is any shift that regularly starts on or after 11:00 a.m. but before 7:00 p.m.

35.     FCA's third shift is any shift that regularly start on or after 7:00 p.m. but before 4:00 a.m.

36.     Plaintiffs and FCA's other hourly employees were eligible for, and regularly received, various routine and non-discretionary bonuses in addition to their base hourly rate and any shift differentials.

37.     A "bonus" is defined as "a sum which is paid as an addition to total wages usually because of extra effort of one kind or another, or as a reward for loyal service or as a gift." 29 C.F.R. § 778.502.

38.     However, FCA failed to take its shift differentials and non-discretionary bonuses into consideration when calculating its hourly employees' regular rate of pay and resulting overtime rate premium. As a result, FCA did not pay the proper overtime rate under the FLSA.

39.     As non-exempt employees, FCA's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

40.     Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

41.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29

C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

42.     FCA's shift differentials, non-discretionary bonuses, and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

43.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to FCA's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

44.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime

requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

45.     Plaintiffs' "total remuneration" included not only their base hourly pay, but also any shift differentials and non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

46.     However, FCA failed to properly incorporate shift differentials and non-discretionary bonuses into its hourly employees' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

47.     Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiffs and those similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

48.     Plaintiffs and those similarly situated have regularly worked in excess of 40 hours a week and have been paid *some* overtime for those hours but at a rate that does not include Defendant's shift differentials and non-discretionary bonuses

as required by the FLSA.

49.    For example, Plaintiff Featherstone's pay stub for the pay period 1/4/2021 through 1/10/2021 shows 55.2 hours of work, a base hourly rate of $15.78, and gross earnings of $1,047.16 inclusive of $49.86 in shift differential pay. However, FCA failed to properly calculate the shift differential into her regular rate and, therefore, violated the FLSA.

50.    In another example, Plaintiff Featherstone's pay stub for the pay period 12/14/2020 through 12/20/2020 shows 47.3 hours of work, a base hourly rate of $15.78, and gross earnings of $844.19 inclusive of $40.20 in shift differential pay. However, FCA failed to properly calculate the shift differential into her regular rate and, therefore, violated the FLSA.

51.    In another example, Opt-In Plaintiff Sarah Schultz's pay stub for the pay period 10/24/2022 through 10/30/2022 shows 48.5 hours of work, a base hourly rate of $31.77, and gross earnings of $1,759.66 inclusive of $83.79 in shift differential pay. However, FCA failed to properly calculate the shift differential into her regular rate and, therefore, violated the FLSA.

52.    Moreover, to the extent FCA's non-discretionary bonuses were required to be allocated among multiple workweeks for purposes of calculating the FLSA regular rate (*see e.g.*, 29 C.F.R. § 778.209), FCA also failed to incorporate those bonuses into its calculations.

53.     For example, on June 10, 2022, FCA paid Plaintiff Featherstone a $500 performance bonus but failed to properly recalculate that payment into its regular rate calculations as required by the FLSA.  This bonus was not excludable from the regular rate calculations under Section 207(e).

54.     FCA paid Plaintiffs, and its other hourly employees, additional non-discretionary remuneration that FCA failed to include in the regular rate calculation.

55.     In addition to the regular rate violations identified above, FCA also violated the FLSA by simply failing to pay Plaintiffs and other hourly employees for regular overtime hours at 1.5 times their base rate of pay.  For example, Plaintiff Featherstone's paystub for the pay period 1/31/2022 through 2/6/2022 shows 40.7 hours of work, a base hourly rate of $18.54, and gross earnings of $754.58. It is obvious from the paystub that FCA only paid Featherstone at her base hourly rate for the entire 40.7 hours and, therefore, violated the FLSA's overtime requirements. 29 U.S.C. § 207.

56.     As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and expenses, interest, court costs, and any other relief deemed appropriate by the Court.

## FLSA COLLECTIVE ACTION ALLEGATIONS

57.     Pursuant to 29 U.S.C § 216(b), Plaintiffs bring this action on behalf of all FCA hourly employees who: (a) received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other extra compensation for work performed during the applicable statutory period; and (b) whose overtime rates during this period did not account for this pay as required by FLSA and its attendant regulations.

58.     Plaintiffs and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and did receive a base hourly rate, and shift differential pay and non-discretionary bonuses, but their overtime pay was not calculated as required by the FLSA.

59.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

60.     Resolution of this action requires inquiry into common facts.

61.     These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

62. These employees should be promptly notified of this action through direct U.S. mail and/or other means including email or text message and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA. See *Clark v. A&L Homecare and Training Ctr., LLC*, ___ F.4th ___, 2023 WL 355657, (6th Cir. May 19, 2023).

63. There are thousands of similarly situated current and former FCA employees who were not paid their required overtime rates and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

64. Plaintiffs Davis, Marks, Ruffcorn, and Tillman bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and on behalf of all FCA hourly employees who: (a) received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other extra compensation for work performed during the applicable statutory period; and (b) whose overtime rates during this period did not account for this pay as required by the Illinois Wage Acts and their attendant regulations (hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

16

65.     The Rule 23 Illinois Class members are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds (if not thousands) of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

66.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Illinois Class members. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether Rule 23 Illinois Class members received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other compensation for work performed during the applicable statutory period; and

      b.    Whether Rule 23 Illinois Class members' overtime rates during this period properly accounted for this pay as required by Illinois state law and its attendant regulations.

67.     Plaintiffs Davis, Marks, Ruffcorn, and Tillman's claims are typical of those of the Rule 23 Illinois Class in that they and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs Davis, Marks, Ruffcorn, and Tillman's claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

68.     Plaintiffs Davis, Marks, Ruffcorn, and Tillman will fully and adequately protect the interests of the Rule 23 Illinois Class and retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither these Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Illinois Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout Illinois.

70.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

71.     Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue

his claim as a class action").

72.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## RULE 23 OHIO CLASS ACTION ALLEGATIONS

73.     Plaintiffs Haley, Rodriguez, and Salazar bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and on behalf of all FCA hourly employees who: (a) received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other extra compensation for work performed during the applicable statutory period; and (b) whose overtime rates during this period did not account for this pay as required by the Ohio Wage Acts and their attendant regulations (hereinafter referred to as the "Rule 23 Ohio Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

74.     The Rule 23 Ohio Class members are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds (if not thousands) of Rule 23 Ohio Class members. Rule 23 Ohio Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

75.    There is a well-defined community of interest among Rule 23 Ohio Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Ohio Class members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether Rule 23 Ohio Class members received a base hourly rate, shift differential pay, non-discretionary bonuses, and/or other compensation for work performed during the applicable statutory period; and

b.    Whether Rule 23 Ohio Class members' overtime rates during this period properly accounted for this pay as required by Ohio state law and its attendant regulations.

76.    Plaintiffs Haley, Rodriguez, and Salazar's claims are typical of those of the Rule 23 Ohio Class in that they and all other Rule 23 Ohio Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

77.    Plaintiffs Haley, Rodriguez, and Salazar will fully and adequately protect the interests of the Rule 23 Ohio Class and retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither these Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Ohio Class.

78.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Ohio Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout Ohio.

79.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

80.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

81.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

82.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

83.     FCA US, LLC is an employer within the meaning of 29 U.S.C § 203(d).

84.     Plaintiffs are employees within the meaning of 29 U.S.C C 203(e).

85.     The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's shift differentials and non-discretionary bonuses do not fall into any of those exceptions.

86.     FCA failed to properly include shift differentials and non-discretionary bonuses into the regular rate of pay for Plaintiffs and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendants' hourly employees are working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

87.     At all relevant times, Plaintiffs and other hourly employees regularly worked in excess of forty (40) hours in a workweek.

88.     In some workweeks where Plaintiffs and other hourly employees

worked more than 40 hours, FCA violated the FLSA by failing to pay an overtime premium at all, regardless of whether shift differential pay or bonuses were paid.

89.    At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiffs and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

90.    As a result of Defendant's willful failure to compensate Plaintiffs and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104.  Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

91.    Plaintiffs and all others similarly situated are entitled to backpay, plus liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiffs and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29

U.S.C. § 211(c).

92.     Plaintiffs and all others similarly situated are entitled to back pay, liquidated damages in an amount equal to their back pay, plus attorney's fees, costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATIONS OF THE ILLINOIS**
**MINIMUM WAGE LAW, 820 ILCS § 105, *et seq*.**
**(Plaintiffs Davis, Marks, Ruffcorn, and Tillman on Behalf of the Rule 23 Illinois Class)**

93.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

94.     At all times relevant to this action, Defendant was an employer covered by the overtime and wage mandates of the Illinois Minimum Wage Law, and Plaintiffs Davis, Marks, Ruffcorn, and Tillman, and members of the Rule 23 Illinois Class, were employees entitled to the IMWL's protections. *See* 820 ILCS § 105/3.

95.     The IMWL entitles employees to compensation for every hour worked in a workweek. *See* 820 ILCS 105/4a.

96.     The IMWL entitles employees to overtime compensation at a rate equal to one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per week. *See* 820 ILCS 105/4a.

97.     Section 200.170 of the Illinois Administrative Code states that for guidance in interpreting Illinois law, federal regulations may be used. (56 Ill. Admin. Code, ch. I, sec. 200.170 (1985)). Section 200.420 of the Code, which describes

methods of calculating overtime, precisely parallels the federal regulations. (56 Ill. Admin. Code, ch. I, sec. 200.420 (1985)).

98.   Defendant violated the IMWL by regularly and repeatedly failing to include all remuneration when computing Plaintiffs Davis, Marks, Ruffcorn, and Tillman, and the Rule 23 Illinois Class members' regular rate for purposes of overtime pay.

99.   At all relevant times, Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class regularly worked in excess of forty (40) hours in a workweek.

100.   In some workweeks where Plaintiffs and other hourly employees worked more than 40 hours, FCA violated the IMWL by failing to pay an overtime premium at all, regardless of whether shift differential pay or bonuses were paid.

101.   By failing to pay overtime compensation due to Plaintiffs, Defendant willfully, knowingly, and/or recklessly violated the IMWL which requires overtime compensation of one and one-half times the regular rate to be paid.

102.   As a result, Plaintiffs Davis, Marks, Ruffcorn, and Tillman, and members of the Rule 23 Illinois Class, have and will continue to suffer loss of income and other damages.

103.   Accordingly, these Plaintiffs are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the IMWL at an

amount to be proven at trial.

## COUNT III
## VIOLATIONS OF THE ILLINOIS WAGE PAYMENT
## AND COLLECTION ACT, 820 ILCS § 115/1, *et seq.*
## (Plaintiffs Marks, Ruffcorn, and Tillman on Behalf of the Rule 23 Illinois
## Class)

104.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

105.   At all times relevant to this action, Defendant was an employer covered by the overtime and wage mandates of the IWPCA and Plaintiffs Davis, Marks, Ruffcorn, and Tillman, and members of the Rule 23 Illinois Class, were employees entitled to the IWPCA's protections. *See* 820 ILCS § 105/1, *et seq.*

106.   Section 200.170 of the Illinois Administrative Code states that for guidance in interpreting Illinois law, federal regulations may be used. (56 Ill. Admin. Code, ch. I, sec. 200.170 (1985)). Section 200.420 of the Code, which describes methods of calculating overtime, precisely parallels the federal regulations. (56 Ill. Admin. Code, ch. I, sec. 200.420 (1985)).

107.   Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class had an agreement with Defendant at the outset of their employment that they would receive a base hourly wage for all time worked for Defendant.

108.   Defendant was at all times aware of its obligation to pay its hourly employees an overtime premium for hours over 40 in a workweek, aware of its obligation to calculate the "regular rate" of pay, and is aware of the compensation

actually paid to Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class

109. At all relevant times, Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class regularly worked in excess of forty (40) hours in a workweek.

110. In some workweeks where Plaintiffs and other hourly employees worked more than 40 hours, FCA violated the IWPCA by failing to pay an overtime premium at all, regardless of whether shift differential pay or bonuses were paid.

111. Defendant failed to pay Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class the proper overtime wages to which they are entitled.

112. Defendant's violations of the IWPCA were knowing and willful. Defendant knew or could have easily accounted for and properly compensated Plaintiffs Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class for their work, but did not.

113. As a result, Plaintiffs Davis, Marks, Ruffcorn, and Tillman and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.

114. Accordingly, Plaintiffs are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the IWPCA at an amount to be proven at trial.

**COUNT IV**
**VIOLATIONS OF THE OHIO MINIMUM FAIR**
**WAGE STANDARDS ACT, OHIO REV. CODE ANN. § 4111 *et seq*.**
**(Plaintiffs Haley, Rodriguez, and Salazar on Behalf of the Rule 23 Ohio Class)**

115.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

116.    At all times relevant to this action, Defendant was an employer covered by the overtime and wage mandates of the Ohio Minimum Fair Wage Standards Act, and Plaintiffs Haley, Rodriguez, and Salazar, and members of the Rule 23 Ohio Class, were employees entitled to the OMFWSA's protections. *See* Ohio Rev. Code Ann. § 4111.03.

117.    The OMFWSA entitles employees to compensation for every hour worked in a workweek. *See* Ohio Rev. Code Ann. § 4111.01.

118.    The OMFWSA entitles employees to overtime compensation at a rate equal to one and one-half times their "regular rate" of pay for all hours worked in excess of 40 hours per week. *See* Ohio Rev. Code Ann. § 4111.03.

119.    "The OMFWSA parallels the FLSA, and courts approach issues regarding unpaid overtime raised under the FLSA and OMFWSA in a unitary fashion." *Stang v. Paycor, Inc.*, 582 F. Supp. 3d 563, 566 (S.D. Ohio 2022).

120.    Defendant violated the OMFWSA by regularly and repeatedly failing to include all remuneration when computing Plaintiffs Haley, Rodriguez, and Salazar, and the Rule 23 Ohio Class members' "regular rate" of pay for purposes of overtime, and by failing to pay the proper overtime premium for all work in excess of 40 hours

per week.

121.   At all relevant times, Plaintiffs Haley, Rodriguez, and Salazar and members of the Rule 23 Ohio Class regularly worked in excess of forty (40) hours in a workweek.

122.   In some workweeks where Plaintiffs and other hourly employees worked more than 40 hours, FCA violated the OMFWSA by failing to pay an overtime premium at all, regardless of whether shift differential pay or bonuses were paid.

123.   As a result, Plaintiffs Haley, Rodriguez, and Salazar and members of the Rule 23 Ohio Class have and will continue to suffer loss of income and other damages.

124.   Accordingly, Plaintiffs are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the OMFWSA at an amount to be proven at trial.

### COUNT V
### VIOLATIONS OF THE OHIO PROMPT PAY ACT
### OHIO REV. CODE ANN. § 4113.15
### (Plaintiffs Haley, Rodriguez, and Salazar on Behalf of the Rule 23 Ohio Class)

125.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

126.   Ohio Rev. Code Ann. § 4113.15(A) requires that employers pay their employees on or before the first day of each month wages earned during the first half of the preceding month ending with the 15th day thereof and pay their

employees on or before the 15th day of each month wages earned during the second half of the preceding month.

127.   Ohio Rev. Code Ann. § 4113.15(B) requires that where wages remain unpaid for 30 days beyond a regularly scheduled payday and no contest, court order, or dispute accounts for the non-payment, the employee is entitled to liquidated damages in the amount of 6% or $200.00 per violation, whichever is greater.

128.   "Claims for overtime payments brought under the Ohio Prompt Pay Act rise and fall with claims for overtime payments brought under the FLSA and the OMFWSA." *Stang v. Paycor, Inc.*, 582 F. Supp. 3d 563, 567 (S.D. Ohio 2022).

129.   No bona fide and legally cognizable dispute related to wages exists accounting for Defendant's failure to timely pay Plaintiffs Haley, Rodriguez, and Salazar and members of the Rule 23 Ohio Class.

130.   Accordingly, Plaintiffs are entitled to recover the amount of damages due and owing from Defendant under Ohio Rev. Code Ann. § 4113.15(B).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, requests the following relief:

a.   Authorizing notice of this action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiffs a list of all persons employed by it who were eligible for and did receive a base hourly rate, shift differential pay, non-discretionary bonus, and/or any other non-excludable form of compensation in at least one workweek where they also worked over 40 hours. This list shall include the last

known addresses, emails, and telephone number of each such person, so that Plaintiffs can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.  Certifying this action as a class action (for the Rule 23 Illinois and Ohio Classes) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Illinois and Ohio state law claims (Counts II-V);

c.  Designating Plaintiffs as the representatives of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

d.  A complete accounting of all the compensation Plaintiffs and all others similarly situated are owed;

e.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.  Declaring Defendant's violations of the FLSA were willful;

h.  Declaring Defendant violated the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, the Ohio Wage Act, and the Ohio Prompt Pay Act;

i.  Declaring Defendant's violations of the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, the Ohio Wage Act, and the Ohio Prompt Pay Act were willful;

j.  A monetary judgment awarding full back pay and an equal amount in liquidated damages;

k.  An award of pre- and post-judgment interest;

l.  An award of costs and expenses of this action together with reasonable attorneys' fees, and a service payment to the named Plaintiffs; and

m.  Such other and further relief as this Court deems just and proper.

31

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.


Date: June 5, 2023                           Respectfully submitted,

                                                                    */s/Jesse L. Young*
Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com

Jonathan Melmed (CA SBN 290218)
Laura Supanich (P85849) (CA SBN 314805)
**MELMED LAW GROUP, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiffs and the Proposed Collective*